UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY, )
 )
Plaintiff, )
 )
v. )          3:06-cv-85-WGH-RLY
 )
LUTHER McNEAL, MONICA McNEAL, )
KENDALL O'DONNELL, JENNIFER O'DONNELL, )
LISA O'DONNELL, DRAKE O'DONNELL, )
TABITHA LOWRY,  TIA O'DONNELL, )
BRESHAUNA RIVERS, CAROL O'DONNELL, )
and DOROTHY O'DONNELL, )
 )
Defendants. )

## ENTRY ON PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

### Introduction

This matter is before the Honorable William G. Hussmann, Jr., United States

Magistrate Judge, on Plaintiff's Motion for Partial Summary Judgment filed

December 5, 2006.  (Docket Nos. 38-39).[1]  Defendants filed their responses on

February 9, 2007.  (Docket Nos. 43-44).  Plaintiff filed its reply brief on March 2,

2007.  (Docket No. 47).[2]  The O'Donnell, Lowry and Rivers Defendants filed a

---

[1]In their First Amended Case Management Plan filed August 21, 2006, the parties consented to Magistrate Judge jurisdiction in this case.  (Docket No. 27). District Judge Richard L. Young entered an Order of Reference on August 23, 2006. (Docket No. 28).

[2]Plaintiff also filed a Motion for Hearing on Plaintiff's Motion for Summary Judgment on March 2, 2007.  (Docket No. 48).  The Court concludes that no hearing is necessary and that this matter may be resolved on the briefs alone.  Plaintiff's Motion for Hearing is **DENIED, as moot.**

Surreply on March 13, 2007.  (Docket No. 49).[3]   These same Defendants also filed a Motion to Strike Plaintiffs' Notice of Additional Authority.  (Docket No. 57).[4]

## **Background**

This matter arises out of a motor vehicle accident which occurred on July 3, 2004, on Interstate I-55 in Pemiscot County, Missouri.  (Complaint ¶ 9).  On July 3, 2004, at approximately 7:55 a.m., Defendants Kendall O'Donnell, Jennifer O'Donnell, Lisa O'Donnell, Drake O'Donnell, Tabitha Lowry, Tia O'Donnell, Breshauna Rivers, Carol O'Donnell and Dorothy O'Donnell were passengers in a 2002 green Ford E350 van, which was being operated by Defendant Monica McNeal, when the vehicle was involved in a motor vehicle accident which involved the van leaving the traveled portion of the highway, rolling over, and causing injuries to Defendants who were each occupants of the van.  (*Id.* ¶ 10).  According to Defendants, the July 3, 2004 accident was caused, in part or in whole, due to the actions of an unknown motorist operating a "black car" that cut in front of the van[5]

---

[3]Plaintiff filed a Motion to Strike Defendants' Surreply on March 20, 2007. (Docket No. 50).  However, the Court has determined that the Surreply was warranted in this case because these briefs amount to cross-motions for summary judgment and Defendants are entitled to reply to Plaintiff's brief in opposition under Local Rule 56.1. Plaintiff's Motion to Strike Defendants' Surreply is, therefore, **DENIED.**

[4]While the authority filed was untimely, the Court's independent research had discovered the pertinent portions of these cases.  Therefore, the Motion to Strike Plaintiff's Notice of Additional Authority is **DENIED.**

[5]There may be a factual dispute as to whether the "black car" actually struck the van.  For purposes of this motion, the Court will assume that the black car did strike the van.  Some portions of this opinion may indicate that a different result occurs if the black car did not make physical contact with the van.

and forced it off the traveled portion of the roadway *and/or* due to the actions of Monica McNeal.  (*Id.* ¶ 11-12).

At the time of the incident described above, Defendants Kendall O'Donnell, Jennifer O'Donnell, Lisa O'Donnell, Drake O'Donnell, and Tabitha Lowry resided with Luther and Monica McNeal at 14 West Maryland Street in Evansville, Indiana, and were related to Luther and Monica McNeal by blood or marriage.  (*Id.* ¶ 4).

The 2002 green Ford E350 van involved in the accident had been rented by the McNeals from Bruce Woodring Auto Leasing and Sales in Henderson, Kentucky, for the trip.  (*Id.* ¶ 8).

On July 3, 2004, Defendants Luther and Monica McNeal had in effect a certain policy of automobile liability insurance issued by Plaintiff, State Farm Mutual Automobile Insurance Company, under Policy No. 48-1472-C07-14, which insured a 1998 Chevrolet Venture van and provided liability insurance coverage limits of $50,000 per person and $100,000 per accident, medical payments coverage of $5,000 per person and uninsured/underinsured motor vehicle insurance in the amount of $50,000 per person/$100,000 per accident.  (Id. ¶ 3).  The Policy was issued by the State Farm Indiana Operations Center office in West Lafayette, Indiana, and was sent to Luther and Monica McNeal's residence located at 14 West Maryland Street in Evansville, Indiana.  (*Id.* at Ex. A).  The terms of the insurance policy were negotiated by the McNeals and the office of State Farm agent Vicki Brasel, located at 11 Vann Avenue in Evansville, Indiana.  (*Id.*)  Additionally, at the time of the alleged incident, the McNeals had in effect one other State Farm automobile insurance policy, insuring another automobile that they owned under

Policy #0772-214-14 which provided identical liability coverage and uninsured

motorist coverage ($50,000 per person/$100,000 per accident) as was provided by

Policy #48-1472-C07-14. (*Id.* at Count III and Ex. B).

As a result of the above-described incident, the Defendant driver, Monica

McNeal, and the above-listed passengers/occupants of the 2002 green Ford E350

van, claimed to have suffered injuries of one type or another as a result of said

incident. (*Id.* ¶ 13). Further, Plaintiff anticipates that Defendant Luther McNeal, as

husband of Defendant Monica McNeal, may also claim to have suffered certain

injuries in the form of loss of consortium or loss of services as a consequence of the

motor vehicle accident on July 3, 2004. (*Id.* ¶ 14). Plaintiff has already received

various claims and/or demands from representatives of Defendants for damages as

a consequence of injuries they claim to have suffered in the July 3rd motor vehicle

accident. (*Id.* ¶ 15).

Plaintiff brought this action alleging that it has "no obligation to defend or

indemnify Monica McNeal for any claims of negligence or fault under the liability

provisions of this State Farm policy for claims asserted by her and the injuries

suffered by the Defendants, Kendall O'Donnell, Jennifer O'Donnell, Lisa O'Donnell,

Drake O'Donnell, and Tabitha Lowry," pursuant to the policy's family exclusion.

(Complaint at Count I, ¶ 4). Plaintiff also alleges that the State Farm policy does not

provide for uninsured motorist coverage given the circumstances surrounding the

automobile accident at issue in this suit. (Complaint at Count II, ¶¶ 3-4). Finally,

Plaintiff alleges that the State Farm policy includes anti-stacking provisions, that

Indiana law permits such provisions, and that the provisions should be enforced in this instance.  (Complaint at Count III, ¶¶ 3-5).

In its Partial Motion for Summary Judgment, Plaintiff argues that Indiana law applies to this dispute, that the State Farm policy's family exclusion applies and relieves Plaintiff of any obligation with regard to injuries sustained by Defendants Kendall O'Donnell, Jennifer O'Donnell, Lisa O'Donnell, Drake O'Donnell, and Tabitha Lowry, and that the State Farm policy's anti-stacking and setoff/credit provisions also apply to this suit.

## **Analysis**

The parties' cross-motions and briefs have asked the Court to interpret the policy provisions and render certain legal declarations which will govern the final resolution of the claims brought under the policies.  The questions posed are as follows:

1.  Shall the insurance policy be interpreted under Indiana or Missouri law?

2.  Under the applicable state's law, does the "Out-of-State Coverage" provisions require the application of Missouri law to any claims?

3.  Under the applicable state's law, does the "Resident Relative Exclusion" apply in this case?

4.  If Defendants' vehicle was not "struck," would payments be required under the policy?

5.  Do the anti-stacking provisions in the policy apply in this case?

6.  Is State Farm entitled to an offset?

7.  How does the doctrine of "*dépeçage*" affect the outcome of this case?

**Issue 1:      Shall the insurance policy be interpreted under Indiana or Missouri law?**

This is a suit based on the Court's diversity jurisdiction.  While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits.  *First Nat. Bank and Trust Corp. v. American Eurocopter Corp.,* 378 F.3d 682, 689 (7th Cir. 2004).  The Court must, therefore, apply Indiana substantive law.  However, '[i]f the laws of more than one jurisdiction arguably are in issue, *Erie* also requires a federal court to apply [the forum] state's choice of law rules."  *Jean v. Dugan,* 20 F.3d 255, 260-61 (7th Cir. 1994).  Thus, the Court must apply Indiana's choice of law rules.

In Indiana, choice of law rules in the area of contracts call for the Court to apply the law of the place with the "most intimate contacts" or "most significant relationship."  *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.,* 28 F.3d 572, 581 (7th Cir. 1994).  The Supreme Court of Indiana, in *W.H. Barber Co. v. Hughes,* indicated that this test requires the Court to examine "all acts of the parties touching the transaction in relation to the several states involved," and follow "the law of that state with which the facts are in most intimate contact."  *W.H. Barber Co. v. Hughes,* 63 N.E.2d 417, 423 (Ind. 1945).  In determining which state has the most intimate contacts, the list of factors that courts in Indiana are to consider include: (1) the place of contracting; (2) the place where contract negotiations occurred; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the location of the parties.  *Employers Ins. of Wausau v. Recticel Foam Corp.,* 716 N.E.2d 1015, 1024 (Ind.Ct.App. 1999).

Defendants argue that *Cox by Zick v. Nichols,* 690 N.E.2d 750 (Ind.Ct.App. 1998), should apply to the facts of this case, and they further argue that *Cox* requires a hybrid contract/tort choice of law analysis in cases involving disputes about uninsured motorist policies.  However, we have examined *Cox* and its predecessor, *Pennington v. American Family Ins. Group,* 626 N.E.2d 461 (Ind.Ct.App. 1993), and determined that those cases lead the Court to the conclusion that the proper choice of law analysis lies in contract.

In *Cox,* the Indiana Court of Appeals did not squarely address whether a contract or tort analysis should be applied in an uninsured motorist claim context. In that case, the Court held that the factors there present favored the application of Indiana law "under *either* the contract or the tort analysis."  *Cox,* 690 N.E.2d at 752 (emphasis added).  This Court cannot discern a clear holding that one or the other of the two possible analyses should apply.  Because *Cox* did not clearly reverse or modify *Pennington,* this Court concludes that *Pennington* stands as the most recent holding addressing this issue in Indiana.

*Pennington* clearly announced that "[i]n conflict of law cases involving the interpretation of insurance contracts, the law of the state where the contract is executed controls."  *Pennington*, 626 N.E.2d at 465.  Specifically, *Pennington* states:

> We next consider under choice-of-law analysis which law applies to the Policies, specifically the underinsured coverage provisions at issue.  American Family contends that Indiana law applies to interpret the Policies because Indiana has the most intimate contacts with the case.  We agree and conclude that Indiana law controls.
>
> The law of the forum having the most intimate contacts with the facts determines which law governs an action on a contract.  *Dohm & Nelke v. Wilson Foods Corp.* (1988), Ind.App., 531 N.E.2d 512, 513.  The determination of which state law applies is aided by consideration of

several factors:  the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the parties' place of business.  *Id.*  In conflict of law cases involving the interpretation of insurance contracts, the law of the state where the contract is executed controls.  *See Travelers Insurance Co. v. Eviston* (1941), 110 Ind.App. 143, 152, 37 N.E.2d 310, 313.  An insurance contract is executed in the state where application is made, the premium is paid and the policy is delivered.  *Id.*

*Id.*  Here, the issue presented to the Court is a straight contractual interpretation issue.  Hence, *Pennington* controls the facts of this case, and we need only look to the state where the insurance contract was executed to determine which state's laws apply.

In this instance, the terms of the insurance contract were negotiated in Indiana.  (Complaint at Ex. A).  The insurance policy was sent to Luther and Monica McNeal in Indiana.  (*Id.*)  Additionally, the policy covered a vehicle licensed in Indiana.  (*See Id.*).  Finally, the McNeals are Indiana residents while State Farm is an Illinois company.  (*Id.*)  All of these contacts, except for the location of State Farm in Illinois and the fact that the vehicle involved in the accident was leased in Kentucky,[6] lean in favor of the application of Indiana law.  No contacts lead to the application of Missouri law.  Because the insurance contract was clearly executed in Indiana, and because the factors listed in *Recticel Foam* weigh heavily in favor of applying Indiana law, the Court concludes that Indiana law must be applied to the interpretation of the insurance contract in dispute.

---

[6]The parties do not provide us with facts addressing whether the vehicle was registered or garaged in Kentucky or some other state.  The lease was apparently executed in Kentucky.  This Court cannot conclude that the vehicle involved in the accident was registered or garaged in either Indiana or Kentucky.

Indiana contract interpretation principles applicable to insurance contracts have been most recently restated in *Property-Owners Ins. Co. v. Ted's Tavern, Inc.,* as follows:

> "The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *Amerisure, Inc. v. Wurster Constr. Co.,* 818 N.E.2d 998, 1001 (Ind.Ct.App. 2004), *clarified on reh'g on other grounds,* 822 N.E.2d 1115 (2005). As we do with other contracts, we interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as manifested in the insurance contract. *See Burkett v. Am. Family Ins. Group,* 737 N.E.2d 447, 453 (Ind.Ct.App. 2000). "Although some special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and the insured, if an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 527 (Ind.2002). Moreover,
>
> > [a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy.
> >
> > An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms. However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract.
>
> *Amerisure,* 818 N.E.2d at 1002 (citations omitted).

*Property-Owners Ins. Co. v. Ted's Tavern, Inc.,* 853 N.E.2d 973, 977-78 (Ind.Ct.App. 2006).

**Issue 2:    Under Indiana law principles, does the "Out-of-State Coverage" provisions require the application of Missouri law to any claims?**

Having determined that Indiana law applies to principles of contract interpretation in this case, this Court must now determine how the insurance contract which contains out-of-state coverage provisions apply to the facts of this case under Indiana law.

We draw guidance again from *Pennington* which states:

> In determining whether a contract is ambiguous, we may not consider individual clauses without reference to the whole instrument. *100 Center Development Co. v. Hacienda Mexican Restaurant, Inc.* (1989), Ind.App., 546 N.E.2d 1256, 1258.  Even when an ambiguity is apparent, the instrument is not considered ambiguous until the four corners of the instrument have been searched to determine if the parties' intent can be ascertained.  *Id.*  We must strive to harmonize all of a contract's provisions and not concentrate upon some clause or language taken out of context.  *Keystone Square Shopping Center Co. v. Marsh Supermarkets, Inc.* (1984), Ind.App., 459 N.E.2d 420, 422-24, *trans. denied.*

*Pennington,* 626 N.E.2d at 464.

In this case, like in *Pennington,* the insurance policy itself contains several components.  One component is a section which defines words that are used in several parts of the policy; contains certain declarations and provisions applicable to financed vehicles; and describes an insured's duty in reporting a claim.

The policy is thereafter divided into several additional "sections."  The first is entitled "SECTION I – LIABILITY – COVERAGE A."  Included within this section is a subsection entitled "Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law."  This subsection specifically addresses how the "coverage" under the *liability* portion of the policy may be changed when an insured, in this case Mrs. McNeal, "is in another state . . . and, as a nonresident, becomes subject to

its motor vehicle compulsory insurance, financial responsibility or similar law."
(Complaint at Ex. A, p. 9).

It is important to note, however, that Section III of the policy which applies to
"UNINSURED MOTOR VEHICLE – COVERAGE U1" (that elected by Mrs. McNeal)
does *not* contain a clause dealing with "Motor Vehicle Compulsory Insurance Law or
Financial Responsibility Law" or any similar language.  Therefore, because no such
out-of-state coverage provisions have been incorporated into that section of the
policy, Indiana's law would remain applicable to claims brought under Section III.

From this omission and the overall construction of the policy, the Court must
conclude that the intention of the parties was:

> (1)   to provide for some adjustment to the terms of the *liability*
>        "coverage" when an insured drives a vehicle out of state; and
>
> (2)   *not to include any change* in policy terms for *uninsured* motorist
>        claims which occur when the insured "is in another state . . . and,
>        as a non-resident, becomes subject to its motor vehicle
>        compulsory insurance, financial responsibility or similar law."

The Court notes that all of the Defendants in this case other than the driver,
Monica McNeal, may have claims against Monica McNeal under the liability portion
of the policy *as well as* against State Farm under the uninsured motorist section of
the policy to the extent that claims are brought under the "SECTION III –
UNINSURED MOTOR VEHICLE" section of the policy.

To the extent that claims are made against Monica McNeal under Section I
(the *liability* portion) of the policy, this Court must use Indiana law to interpret the
language of the policy at issue.  The provisions of the policy which apply state as
follows:

**Motor Vehicle Compulsory Insurance Law or Financial Responsibility Law**

**1.  Out-of-State Coverage**

If an ***insured*** under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a.    the policy will be interpreted to give the coverage required by the law; and

b.    the coverage so given replaces any coverage in this policy to the extent required by the law for the ***insured's*** operation, maintenance or use of a ***car*** insured under this policy.

Any coverage so extended shall be reduced to the extent other coverage applies to the accident.  In no event shall a ***person*** collect more than once.

**2.     Financial Responsibility Law**

When certified under any law as proof of future financial responsibility, and while required during the policy period, this policy shall comply with such law to the extent required.  The ***insured*** agrees to repay us for any payment we would not have had to make under the terms of this policy except for this agreement.

(Complaint at Ex. A, p. 9).

In this case the language of the State Farm policy does not limit any change to the terms of the policy arising from out of state "operation, maintenance or use of a car" to *merely* a change in the "limits of liability" or amount that the insured may be covered for.  Rather, the policy uses the words "to give the *coverage* required by the law" (Policy at 9) and "the coverage so given *replaces* any *coverage* in this policy to the extent required by the law for the ***insured's*** *operation*, maintenance or *uses* of a ***car*** insured under this policy."  (Emphasis added.)  This language is not, in the

-12-

Court's opinion, ambiguous.  "Coverage," "required by law" for the insured's "operation" or "use" of a vehicle is provided by the policy.  The insurer in this case could have clearly restricted any change in the policy for out-of-state operations to the "limit of its liability" if it chose to do so – but it did not.  By "replacing" coverage in the policy with that "required by law," State Farm has committed itself to protecting its insureds from changed liabilities brought on by the need to conform with various state laws.

Therefore, if Monica McNeal became subject to the compulsory insurance laws of Missouri, the provisions of the liability policy will be subject to the requirements of Missouri law for those claims that are brought by all the Defendants (except Monica McNeal) based upon their claims *against* Monica McNeal under the liability policy.

Did Monica McNeal become subject to Missouri's motor vehicle compulsory insurance, financial responsibility or similar law?

The portion of Missouri law tendered to us in the briefs reads as follows:

### 303.025.  Duty to maintain financial responsibility, methods–violations, penalties–appeals

1.  No owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, register or maintain registration of a motor vehicle, or permit another person to operate such vehicle, unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state.  Furthermore, *no person shall operate a motor vehicle owned by another* with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers the person's operation of the other's vehicle; however, no owner shall be in violation of this subsection if he or she fails to maintain financial responsibility on a motor vehicle which is inoperable or being stored and not in operation. The director may prescribe rules and regulations for the implementation of this section.  (Emphasis added).

MO. REV. STAT. § 303.025.  Our reading of this paragraph suggests that it applies to "owners" in the first sentence.  However, the second sentence provides, "Furthermore, no person shall operate . . . ."  Thus, the "duty to maintain financial responsibility" in Missouri is not limited to "owners" of vehicles registered in the state, but also attaches to "persons" who operate vehicles owned by another.  In addition, a second Missouri statute provides:

**303.180.  Proof by nonresident by insurance, accepted when**

1.  *The nonresident owner of a motor vehicle not registered in this state may give proof of financial responsibility* by filing with the director a written certificate or certificates of an insurance carrier authorized to transact business in the state in which the motor vehicle or motor vehicle described in such certificate is registered, or if such nonresident does not own a motor vehicle, then in the state in which the insured resides, *provided such certificate otherwise conforms to the provisions of this chapter*, and the director shall accept the same upon condition that said insurance carrier complies with the following provisions with respect to the policies so certified: . . . .  (Emphasis added).

MO. REV. STAT. § 303.180.  The Court reads this section of Missouri's statutes to require a "non-resident [who] does not own a motor vehicle" [here, Monica McNeal is a non-resident of Missouri who did not own the vehicle she was operating] must provide insurance that "conforms to the provisions of this chapter."

From this language, this Court concludes that Monica McNeal did become subject to the financial responsibility laws of the State of Missouri and therefore, applying Indiana contract interpretation principles to her insurance contract, she is entitled to out-of-state "coverage" to the extent Missouri has mandated for non-resident operators of motor vehicles.

### Conclusion as to this Issue

To the extent that claims are brought against Monica McNeal under the liability "section" of her insurance policy, she is entitled to the protection and coverage which Missouri requires of those who operate their vehicles upon Missouri highways.

To the extent claims are brought against State Farm requiring that State Farm provide "uninsured motorist coverage" to the insureds, Indiana law must be applied because the insurance contract does not include "out-of-state" coverage under that section of the policy.

**Issue 3:     Under the applicable state's law, does the "Resident Relative Exclusion" apply in this case?**

The State Farm policy contains language in "SECTION I – LIABILITY – COVERAGE A" that provides as follows:

THERE IS NO COVERAGE:

* * * * *

2.   FOR ANY ***BODILY INJURY*** TO:

* * * * *

c.     ANY ***INSURED*** OR ANY MEMBER OF AN ***INSURED'S*** FAMILY RESIDING IN THE ***INSURED'S*** HOUSEHOLD.

(Complaint at Ex. A, pp. 8-9).

This "Family Exclusion" provision in State Farm's policy clearly precludes liability for injuries to members of the insured's household.  The provision provides that there is "no coverage . . . for any bodily injury to . . . any insured or any member of an insured's family residing in the insured's household."  (*Id.*)  And,

-15-

under Indiana law, such a provision within an insurance contract would be permitted.  *See* IND. CODE § 34-30-11-1; *United Farm Bureau Mut. Ins. Co. v. Steele,* 622 N.E.2d 557 (Ind.Ct.App. 1994).

However, as we have previously concluded, claims brought against Monica McNeal under "SECTION I – LIABILITY – COVERAGE A" are now governed by Missouri law because the "Out-of-State Coverage" provisions of that section apply. The "coverage" required by Missouri law is therefore available to those who have claims under the "Liability Policy."  Missouri's Financial Responsibility Insurance law, "the MVFRL", is a compulsory insurance law.  *See Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479 (Mo. 1992).  It requires non-resident operators of motor vehicles to maintain liability insurance of $25,000 per person/$50,000 per occurrence.  *See* MO. REV. STAT. §§ 303.025, 303.180, 303.190.  This minimum coverage must apply even to injuries to members of the insured's household.  *Id.* Under Missouri's financial responsibility/compulsory insurance laws, a policy containing the household exclusion on which State Farm relies will provide liability coverage of $25,000 per person/$50,000 per occurrence in spite of the exclusion. *Id.*

Therefore, the Court declares that the members of the household who have claims under the liability policy against Monica McNeal are *not* precluded from bringing those claims under the *liability* portion of the policy.

The "family exclusion" language relied on by State Farm in this case appears only in Section I of the policy concerning liability coverage.  It does not appear in Section III, nor does it appear in the portion of the policy where definitions are listed

for words which are used in several parts of the policy.  Applying Indiana contract interpretation rules, this Court concludes that State Farm did not intend to have this language apply to provisions other than the "LIABILITY" section of the policy. Therefore, claims brought under "SECTION III – UNINSURED MOTOR VEHICLE" are not governed by the "Family Exclusion" language in the policy.

**Conclusion as to this Issue**

Applying Indiana contract interpretation provisions to the policy at issue, this Court finds that the family exclusion does not apply to either the claims under the liability provisions of the policy or the uninsured motor vehicle provisions.  It does not apply to the liability portion of the policy because the "Out-of-State Coverage" provisions found in the liability section require State Farm to provide what coverage Missouri requires, and the law of Missouri does require at least minimum coverage of family members.  The family exclusion does not apply to the claims for uninsured coverage because that clause does not appear in Section III of the policy, nor in the section of the policy which defines terms that are applicable to all portions of the policy.  State Farm could have included this language in both Section I and Section III of the policy, but chose not to.

**Issue 4:     If Defendants' vehicle was not "struck," would payments be required under the policy?**

The applicable part of the policy which addresses this issue is:

***Uninsured Motor Vehicle*** – means:

* * * * *

> 2.     a hit-and-run" land motor vehicle whose owner or driver remains unknown and which *strikes*: . . . .  (Emphasis added.)

-17-

(Complaint at Ex. A, p. 12).  This language is clear and unambiguous.  No uninsured claim can be made against the insurance company unless the vehicle in which the insured is riding is physically "struck."  In this case, there are disputed facts as to whether the Defendants' vehicle was "struck" by another vehicle.

However, as previously discussed, the claims brought under the liability portion of the policy must be analyzed under principles of Missouri Law.  As presented by the parties, Missouri Revised Statute 379.203 provides, in part:

**379.203.  Automobile liability policy, required provisions-- uninsured motorist coverage required--recovery against tortfeasor, how limited**

1.  No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, . . . in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.  Such legal entitlement exists although the identity of the owner or operator of the motor vehicle cannot be established because such owner or operator and the motor vehicle departed the scene of the occurrence occasioning such bodily injury, sickness or disease, including death, before identification.  *It also exists whether or not physical contact was made between the uninsured motor vehicle and the insured or the insured's motor vehicle.*  (Emphasis added).

MO. REV. STAT. § 379.203.  The cases which have interpreted that statute have indicated that an insurer must provide at least the statutory minimum coverage amount for "miss-and-run" accidents even where the policy provides for a physical contact requirement.  *Dawson v. Denney-Parker,* 967 S.W.2d 90 (Mo.App. E.D. 1998).

**Conclusion as to this Issue**

Therefore, we conclude that if no vehicle "struck" the Defendants' vehicle, the Defendants' claims brought against State Farm under Section III of the policy for "Uninsured Motor Vehicle" are precluded by the language of the policy under Indiana law.  However, the Defendants' claims against Monica McNeal under the liability section of the policy are not completely barred.  Under Missouri law, the claims against the miss-and-run driver may be brought but may also be limited to the statutory minimum coverage amounts required by Missouri – which in this case amount to $25,000 per person/$50,000 per occurrence.

The claims brought against State Farm under the provisions of "SECTION III – UNINSURED MOTOR VEHICLE" are governed by Indiana law.  Applying Indiana law to the contract, the policy is clear.  If there was no physical contact, no claim is available to Defendants under Section III.

**Issue 5:     Do the anti-stacking provisions in the policy apply in this case?**

In this case, the McNeals purchased two separate insurance policies. (Complaint at Count III, ¶ 2).  The State Farm policy contains certain provisions referred to as "Anti-Stacking Provisions" which are found both in "SECTION I – LIABILITY – COVERAGE A" (*see* Complaint at Ex. A, p. 9) and in "SECTION III – UNINSURED MOTOR VEHICLE" (*see id.* at 16).

The analysis of this issue follows the same pattern as the other issues.

The policy at issue contains a provision in the liability section of the policy that states:

**If There Is Other Liability Coverage**

**1.     Policies Issued by Us to You, Your Spouse, or Any Relative**

> If two or more vehicle liability policies issued by us to *you, your spouse,* or any *relative* apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability.

(Complaint at Ex. A, p. 9).  Such an anti-stacking provision is permitted under Indiana law.  Ind. Code § 27-7-5-5(a); *see also State Farm Mut. Auto Ins. Co. v. Conway,* 779 F.Supp. 963 (S.D. Ind. 1991).

However, as previously discussed, the "Out-of-State Coverage" provisions in the policy require the "coverage" mandated by Missouri law to apply to claims brought under the liability portion of the policy.  And under *Missouri* law, if there is more than one policy, *American Standard Ins. Co. v. Hargrave,* 34 S.W.3d 88 (Mo. 2000), holds that anti-stacking provisions in each policy are not enforceable.  Each must provide at least the minimum coverage required by Missouri law.  Pursuant to *Hargrave,* if an insured paid for liability coverage under two separate policies, the insured is entitled to collect under both policies regardless of anti-stacking provisions.  *Id.*  Accordingly, contrary to State Farm's argument, and based on the out-of-state coverage provisions and Missouri law mandatory coverage, the limits of coverage under both State Farm policies can be stacked.  The issue of how the stacking can occur and whether persons other than the named insureds under the policy are allowed to "stack" is an issue that is not fully briefed at this time.[7]

---

[7]Whether Missouri would require one policy to pay the limits on its declarations page and the second policy would be allowed to pay only the minimum limits required by law is an issue yet to be addressed.

Therefore, the claims brought under Section I, liability coverage, may be stacked.  If this is a "miss-and-run" accident, two policies apply here; however, under Missouri law for "miss-and-run" accidents, a $25,000 per person/$50,000 per occurrence liability limitation may be required for at least one of the policies.

The anti-stacking provisions in Section III, the uninsured motorist provisions of the policy, provides as follows:

**If There Is Other Coverage – Coverages U and U1**

1.   If uninsured motor vehicle coverage for ***bodily injury*** is available to an ***insured*** from more than one policy provided by us or any other insurer, the total limit of liability available from all policies provided by all insurers shall not exceed the limit of liability of the single policy providing the highest limit of liability.  This is the most that will be paid regardless of the number of policies involved, ***persons*** covered, claims made, vehicles insured, premiums paid or vehicles involved in the accident.

(Complaint at Ex. A, p. 16).  And because Indiana law applies to this issue, we have reviewed the Indiana statute found at IND. CODE 27-7-5-5.  That statute holds that an insurer may include in its policies a provision that limits its liability to "the highest limits under any one (1) policy applicable to the loss."  There is no case law which we have found indicating that Indiana, unlike Missouri, finds these provisions to be void as against public policy.  In fact, to the contrary, *see Ansert by and through Ansert v. Indiana Farmers Mut Ins. Co.,* 659 N.E.2d 614 (Ind.Ct.App. 1995).  Claims brought under Section III of the policy for uninsured motorist coverage are, therefore, limited to the highest limits under any one policy.

**Issue 6:      Is State Farm entitled to an offset?**

The Court must first note that in the event this accident is determined to be a "miss-and-run" accident, Indiana law would preclude the Defendants from recovery

under the uninsured motorist provisions of the policy and the issue of whether an "offset" is necessary becomes moot.

However, assuming that a jury finds that this was a "hit and run" accident, the Court will follow the prior analysis. As to claims brought under Section I, the liability section of the policy, there is language addressing "Limits of Liability." (Complaint at Ex. A, p. 8). This language does not purport to reduce any payments under the section for any other amounts paid or payable to or for the insured.[8] This Court concludes that under Missouri law, the unambiguous language of this policy requires full payment of the liability limits on behalf of Monica McNeal if she is liable for damages to her passengers under Missouri law.

Section III of the policy does specify as follows:

**Limits of Liability – Coverage U1**

* * * * *

3.      Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured:*

   a.      by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured* or *property damage*;

   b.      for *bodily injury* or *property damage* under the liability coverage; or

   c.      under any policy of property insurance.

4.      Any payment made to a *person* under this coverage shall reduce any amount payable to that *person* under the liability coverage.

---

[8]A section does provide that the liability coverage "shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage." This does not speak to issues regarding the juxtaposition of liability and uninsured motorist provisions.

5.    The uninsured motor vehicle coverage shall be excess over and shall not pay again any medical expenses paid under the medical payments coverage.

6.    The limits of liability are not increased because:

    a.    more than one vehicle is insured under this policy; or

    b.    more than one **person** is insured at the time of the accident.

(Complaint at Ex. A, p. 15).  This language must be analyzed under Indiana law.

Here the parties present conflicting views of Indiana law.  State Farm argues that we

should follow *Castillo v. Prudential Property and Cas. Ins. Co.,* 834 N.E.2d 204

(Ind.Ct.App. 2005).  The Defendants argue that *Ansert by and through Ansert,* 659

N.E.2d 614; *Delaplane v. Francis,* 636 N.E.2d 169 (Ind.Ct.App. 1994); and *Tate v.

Secura Ins.,* 587 N.E.2d 665 (Ind. 1992), apply.

The *Castillo* case aptly summarizes the issue here in this language:

> Indiana courts have held that policies containing ambiguous
> reduction language should be interpreted to mean that the amounts
> paid by other sources shall be subtracted from the total damages, while
> policies containing unambiguous language should be interpreted to
> mean that amounts paid by other sources shall be taken from policy
> limits.  *Sutton v. Littlepage,* 669 N.E.2d 1019, 1022 (Ind.Ct.App. 1996).
> "The onus is upon the insurer to write policies which unambiguously
> state that reductions are to be made from the policy limits."  *Id.*  Finally,
> the "trial court's objective is to enforce the parties' intent as manifested
> by the insurance contract."  *Hardiman v. Governmental Interinsurance
> Exch.,* 588 N.E.2d 1331, 1334 (Ind.Ct.App. 1992) (citing *Evans v. Nat'l
> Life Accident Ins. Co.,* 467 N.E.2d 1216, 1219 (Ind.Ct.App. 1984)).

*Castillo,* 834 N.E.2d at 206-07.

The issue then is whether the language in this policy is ambiguous.  In the

three cases that have found insurance policy language "ambiguous," the focus of the

discussion in each is that the insurance company did not attempt to define

-23-

"amounts payable" in any specific manner.  In the *Castillo* case where the reduction language was found to be unambiguous, the policy language was as follows:

> Payments will be reduced by any amount payable by persons responsible for the accident.  Payments under this part will also be reduced by any amount payable under this policy or by other sources.

*Id.* at 207.

The language in the policy at issue in this case is as follows:

> 2.  Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the **insured:**

> * * * * *

> b.      for **bodily injury** under the liability coverage.

(Complaint at Ex. A, p. 14).[9]  This language seems to be closest to the language in *Castillo* and equally unambiguous.

Because the Court finds that the language used in the policy at issue is essentially the same as that found not to be ambiguous in *Castillo,* the Court will find that State Farm is entitled to an "offset" or reduction from policy limits for amounts paid under the liability coverage.

---

[9]The amount of coverage payable under the policy definition for **"Bodily Injury"** is:

> . . . the amount of coverage for all damages due to **bodily injury** to one **person.  "Bodily injury** to one **person"** includes all injury and damages to others resulting from this **bodily injury.**  Under "Bodily Injury – Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person", for all damages due to **bodily injury** to two or more **persons** in the same accident.

(Complaint at Ex. A, p. 14).

**Issue 7:   How does the doctrine of "*dépeçage*" affect the outcome of this case?**

Defendants argue that this Court must apply only one state's law to all the issues in this case because Indiana's choice of law rules do not permit "*dépeçage*."

In *Simon v. U.S.,* 805 N.E.2d 798 (Ind. 2004), "*dépeçage*" is defined as:

> *Dépeçage* is the process of analyzing different issues within the same case separately under the laws of different states.  Although Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately.  For example, an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim.  *Dépeçage* has not been part of Indiana's lexicon.

*Id.* at 801, footnote omitted.

In the case at bar, *dépeçage* does not apply.  Here, this Court is not applying the laws of different states within the same issue.  Rather, we apply Indiana law to determine how an Indiana court would interpret out-of-state coverage provisions found within an insurance policy.  We have applied Indiana's own contract interpretation principles to come to the conclusion that out-of-state coverage provisions in such an insurance policy do something more than merely adjust "liability limits" under the policy to comply with other states' requirements.  In this case, we conclude that under Indiana law the insureds are entitled to additional protection when traveling out of state under the language of the insurance policy.  We are not analyzing "different issues" separately under the same "claim."  It is important to note that Defendants are or may bring separate claims here.  One "claim" is against Monica McNeal for any negligent acts she may have performed as the driver of the vehicle.  This claim is brought under the "liability" coverage of the

-25-

policy. A second and separate claim is being brought against State Farm itself under a separate section of the policy for uninsured motorist coverage. These two are separate claims, addressed in separate sections of the policy and governed by separate language. We apply Indiana contract interpretation principles to both claims to reach the result. The doctrine of "*dépeçage*" is not applicable here.

## Conclusion

This Federal Court, sitting in Indiana, must apply Indiana choice of law doctrines to resolve the dispute in this case. The *Pennington* case provides that in interpreting insurance contracts which contain uninsured motorist coverage, the Court must use contract choice of law principles. The factors which are found in this case suggest that Indiana law should apply to the interpretation of the insurance contract.

Indiana law provides that when construing a contract, this Court must look at the contract as a whole and enforce its terms if they are not ambiguous. In looking at State Farm's policy as a whole, there are two primary sections – one that deals with liability claims *against an insured* and a separate section that deals with claims *against the insurance company* when an insured is injured as the result of an accident with an uninsured motor vehicle. Neither of these two sections are ambiguous. Claims brought under the liability portion of the policy against the driver are subject to out-of-state *coverage* provisions which do something more than merely adjust "limits of liability" to the dictates of various state legislatures. Rather, that clause provides the insured with "coverage" required by another state. Here,

while driving in Missouri, Monica McNeal is subject to liability claims which Missouri imposes upon those who use their highways.  Therefore, she is or may be liable to her own family members.  She may also be held liable even if she was not "struck" by an uninsured motorist, at least to the extent of minimum coverage under Missouri law.  State Farm must provide her with "coverage" for those claims. Because Missouri law allows "stacking" of policies, more than one policy may apply to these claims brought under the liability portions of the policies.

To the extent the Defendants are bringing claims under Section III of the policy (the uninsured motorist provisions) against State Farm, Indiana law applies to these claims.  The Plaintiff's claims are precluded from recovery under that section of the policy if their vehicle was not "struck" by another vehicle.  However, if the vehicle was "struck," any provisions of Indiana law which govern claims brought against family members may apply.

Because we find the language in the uninsured motorist coverage to be unambiguous, State Farm may be entitled to an offset for amounts paid under the liability portion of the policy.

Therefore, the Plaintiff's Motion for Partial Summary Judgment (Docket No. 38) is **GRANTED, in part,** and **DENIED, in part.**  The Motion for Hearing on Plaintiff's Motion for Summary Judgment (Docket No. 48) is **DENIED, as moot**.  The Plaintiff's Motion to Strike Surreply (Docket No. 50) and the O'Donnell, Lowry and

Rivers Defendants' Motion to Strike Plaintiffs' Notice of Additional Authority (Docket No. 57) are **DENIED.**

      **SO ORDERED.**

**Dated:**  June 12, 2007

                                               WILLIAM G. HUSSMANN, JR.
                                                    Magistrate Judge

**<u>Electronic copies to</u>:**

Jeffrey Ryan Kooi
KOOI LAW FIRM LLC
jkooi@indyfirm.com

Kase Leigh McCoy
KIGHTLINGER & GRAY
kmccoy@k-glaw.com

Stephen M. Wagner
WAGNER REESE & CROSSEN LLP
swagner@injuryattorneys.com

Brent R. Weil
KIGHTLINGER & GRAY
bweil@k-glaw.com